## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| David Cocroft and Veynelcia Cocroft )<br><br>)<br>)<br>Plaintiffs, )<br>)<br>)<br>vs. )<br>)<br>HSBC Bank USA, NA, as Trustee of the Deutsche )<br>ALT-A Mortgage Loan Trust, Series 2007-OA3 )<br>Mortgage Pass-through Certificates, Mortgage )<br>Electronic Registration Systems, Inc., Codilis and )<br>Associates, P.C., Countrywide Bank, FSB., Bank of )<br>America Home Loans )<br>)<br>Defendants, *et al.* )<br>)<br>_____ ) | Case No: 10 CV 3408<br><br>Judge Kennelly<br><br>Mag. Judge Ashman |

## FIRST AMENDED COMPLAINT

**COMES NOW,** one David Cocroft and one Veynelcia Cocroft, ("Plaintiffs" or the "Cocrofts") by and through their attorney, LaOuida Glover of Glover Law Office, demanding jury trial, Injunctive and Other Relief, Pursuant to the Truth in Lending Act, RICO, Federal and State of Illinois consumer protection laws, breach of contract and breach of duty of good faith and fair dealing.

## SUMMARY OF THE CASE

1.      This is an action seeking remedies for violations of The Truth in Lending Act, 15 U.S.C. §16o1 *et seq.*, Reg. Z, 12 C.F.R. §226. et seq., Federal Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §1692g(2), Illinois Consumer Fraud and Deceptive Practices Act, ("ICFDPA"), 815 ILCS 505/1 *et seq.,* the Illinois Fairness in Lending Act, RESPA violations, 12 U.S.C. 2605 (b)(1), (2) (a), RICO Act violations, Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§1602(a)(a), 1639, and 1641 (d)(1), Federal Reserve Board Regulation Z, 12 C.F.R. 226 §226.31 and §226.32, breach of contract. This is a predatory lending lawsuit resulting from deceptive practices involved in the Cocrofts' refinance of their principal residence, a scheme of racketeering that defendants engaged in relative to a promissory note, mortgage and other related matters associated with the refinance of Plaintiff's principal residence, Defendants' violations of various consumer protection laws and Plaintiffs' rescission of the promissory note and associated collateral actions and reactions.

## THE PARTIES

2.      Plaintiffs, David and Veynelcia Cocroft, are individuals residing in Country Club Hills, Cook County, Illinois.

3.      HSBC Bank, USA NA ("HSBC") is a federal savings and loan association existing under the laws of the United States with its principal place of business in Wilmington, Delaware.

4.      Mortgage Electronic Registration Systems, Inc. ("MERS") is a Virginia corporation, organized and authorized to do business in Illinois.

5.      On the date and time Plaintiffs executed the Note referred to herein Countrywide Bank, FSB, the alleged Lender, was a Federal Savings Bank organized and existing under the laws of the United States with its principal place of business located at 1199 North Fairfax St. Ste. 500,

Alexandria, VA 22314. Countrywide Bank, FSB ("Countrywide") was bought by Bank of America Home Loans. [1]

6.      Bank of America Home Loans, ("BOA") existing under the laws of the United States with its principal palace of business in Charlotte, North Carolina is the successor to Countrywide.

7.      All Defendants are referred to collectively as "Defendants".

8.      All Defendants are enterprises engaged in interstate commerce, as well as trade and commerce within the meaning of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 *et seq.)* in that they advertised, solicited, offered for sale and provided residential mortgages to Illinois consumers either directly or indirectly and participated in schemes resulting from the origination and/or delivery of mortgages in Illinois.

9.      All Defendants are "debt collectors" as defined in 15 U.S.C. 1692(e), because each regularly use instrumentalities of interstate  commerce and the mails in attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, namely, the alleged actual lenders and mortgagors.

10.      MERS was a loan servicer and/or nominee on behalf of Countrywide, FSB and its successors.

11.      All references to Countrywide recognize the legal position of BOA as successor to Countrywide.

---

[1] On July 1, 2008 Bank of America announced that its purchase of Countrywide Financial Corporation was complete. The purchase of Countrywide Financial Corporation included Countrywide FSB, Countrywide Home Loans and Countrywide Home Loans Servicing, LP.

## JURISDICTION AND VENUE

12.     The United States District Court for the Northern District of Illinois is the correct jurisdiction over the mortgage and note issues raised herein. The federal "Truth In Lending Act"("TILA") 15 U.S.C. §§1935, 1640 *et seq.* and Reg. Z, 12 C.F.R. §226. *et seq.*, Home Ownership Protection Act ("HOEPA") the Racketeering Influence and Corruption ("R.I.C.O. Act"), 18 U.S.C. §1961, et seq., §1964, Federal Consumer Deceptive Practices Act ("FCDPA") and all applicable federal laws, are under federal jurisdiction, Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), breach of contract and breach of duty of good faith and fair dealing.

13.     Under 28 U.S.C. § 1367(a), Article III of the U.S. Constitution, this Court has supplemental jurisdiction over the state claims in this Amended Complaint under the Illinois Consumer Fraud and Deceptive Practices Act because Plaintiffs' claims form part of the same case or controversy.

14.     The United States District Court for the Northern District of Illinois is the correct venue as the subject property is located in the county of Cook, state of Illinois.

## FACTUAL BACKGROUND

The TILA disclosures

15.     On April 17, 2007 ("Settlement Date" or "Closing") the Cocrofts executed a partial fixed and a partial adjustable rate promissory note titled "Payment Advantage Fixed/Adjustable Rate Note" (the "Note"). *See,* Note attached hereto and incorporated herein as Attachment "A".

16.     The Note identifies Countrywide Bank, FSB, as the Lender for loan number 00016665393904007 to refinance the Cocrofts' primary residence located at 19053 Canterbury Place, Country Club Hills, Cook County, Illinois and the payoff of Plaintiffs' third party debt.

17.     The Loan was in the amount of $386,750.00.

18.     The Cocrofts executed the promissory Note and a Mortgage at the closing in Cook County, Illinois ("Closing"). *See,* Mortgage ("Mortgage") attached hereto and incorporated herein as Attachment "B".

19.     The Cocrofts were not provided evidence of an endorsement by Countrywide.[2]

20.     On information and belief Countrywide did not provide the purported capital to fund the Loan and Countrywide was not the true party in interest.

21.     Nevertheless, herein, Countrywide and BOA as successor, are referred to as the "Lender" in this action. *See,* Closing Instructions made a part hereof and attached hereto as Attachment "C".

22.     The Closing Instructions that the alleged Lender provided for the execution of this Loan and Mortgage dated April 17, 2007, fail to mention Countrywide Bank, FSB, as alleged lender or as being involved in this loan.  *See*, Closing Instructions attached hereto as Attachment "C" and incorporated herein.

23.     Rather, the Closing Instructions identify the Bank of New York as "Sender of wired funds to close" and Founders Bank as the "Receiver".

24.     The Closing Instructions refer to Countrywide only as the originator. See, Attachment "C" supra.

---

[2] During the foreclosure action in state court, Plaintiffs were provided what is attached and purported to be the Note that obligates Plaintiffs for the Loan that is the subject of this lawsuit.

25.     This is in direct conflict with paragraph (D) on page 2 of the Mortgage that identifies the Lender as Countrywide Bank, FSB.

26.     False disclosure of the true creditor is a violation of Reg. Z. 12 C.F.R. 226.18(a).

27.     The Closing Instructions also conflict with the chain of assignments as evidenced by endorsements that at some point after the transaction appeared on the Note. The endorsement indicates that the Lender was Countrywide with an endorsement to Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. endorsed in blank.

28.      The ambiguous language contained in the Mortgage further indicates a conspired coordination among Defendants to intentionally confuse consumers including Plaintiffs.

29.     Defendants, Countrywide's and MERS', confusing language and misleading information on the Note and Mortgage as to which entity actually loaned money to Plaintiffs and in identifying MERS' relationship to the Lender constitutes material violations of duties imposed by TILA, and HOEPA. This conduct also constitutes a deceptive practice in violation of Illinois and other federal consumer protection laws.

30.     Defendants, Countrywide and MERS', ambiguous and confusing language combined with misleading information on the Mortgage concealed the true identity of the entity Plaintiffs were contracting with and otherwise shielded Defendants from knowledge that Defendants failed to strictly comply with laws designed to protect consumers.

31.      Here, specifically, while page 1, paragraph (C) of the Mortgage states that "MERS is acting solely as a nominee for Lender and Lender's successors and or assigns…" further within the same document the Mortgage states "…. MERS is the mortgagee under this Security Instrument".

32.     In the same conflicting manner, on page 3 of the Mortgage under Transfer of Rights in the Property, the Mortgage states; "Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located…." See, Attachment "B" supra.

33.     Additionally, Defendant, HSBC produced a note in support of its foreclosure action against Plaintiffs that purports to be Countrywide's endorsements as of April 17, 2007, the date of contracting with Plaintiffs.

34.     Yet, purportedly the same Note was filed with the Cook County Recorder of Deeds on April 30, 2007 without a lender's endorsement.

35.     Other apparently illegal conduct arose out of the Closing. For example, at the Closing, the lender provided the Cocrofts a Truth in Lending Disclosure Statement ("TILA") dated April 17, 2007 that understates the finance charges. *See,* Truth in Lending Statement attached hereto and incorporated herein as Attachment "D".

36.     This TILA disclosure purports to have charged the Cocrofts finance charges in the amount of $724,589.59.

37.     Upon information and belief Countrywide actually charged the Cocrofts $729,682.84 in finance charges in violation of TILA §1640(a).

38.     Further, the true amount of the finance charges were not conspicuous on the Truth-in-lending forms provided to Plaintiffs.

39.     Countrywide's truth in lending disclosure, on its face, understates the amount by approximately $5,093.25 less than the actual finance charges assessed the Cocrofts.

40.     This misstated disclosure is, a material violation of the Truth in Lending Act.12 C.F.R. 226.18(d)(1) , 226.23(g) and 15 U.S.C 1635(i)(g).

8

41.     This misstated disclosure is an unfair, deceptive act and/or practice in violation of 815 ILCS 505/1 under Illinois law and FTC. Illinois Consumer Fraud Act, 815 ILCS 505/1et seq. & 505/2, 15 U.S.C. §45.

42.     A lender fails to comply with TILA requirements whenever the TILA disclosure reflects an amount that is $35.00 or more, less than the true finance charge as the violation applies to foreclosure for rescission and $100.00 when the violation applies to monetary damages. 15 USC 1635(i)(2), 12 C.F.R. 226.23(h), and 12 C.F.R. 226.18(d)(1).

43.     For rescission purposes, the Truth in Lending Act considers the finance charge inaccurate if it is understated by more than half of 1% of the note amount ($1,933.75 here) or $100, whichever is greater. 12 C.F.R 226.18(d)(1),12 C.F.R. 226.23(g).

44.     In or about June 2009, Plaintiff learned that material violations were reflected on the disclosure provided allegedly by Countrywide on April 17, 2007.

45.     In or about June 2009 Plaintiff learned that the real party in interest relative to funding Plaintiff's refinance Loan number 00016665393904007 on April 17, 2007 was not Countrywide FSB.

Assignments without notice to Plaintiffs

46.     Additionally, between the Closing on April 17, 2007 and July 1, 2009, Countrywide, its successors or assigns, assigned or otherwise transferred or granted ownership interests in the Cocrofts' Note to other enterprises including DBS Structured Products, Countrywide Home Loans Servicing, Countrywide Home Loans, Inc. and HSBC Bank USA, NA, as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates. *See*, Pooling and Servicing Agreement, Pgs. 1, 78-82, 84-86 made a part hereof and attached

9

hereto as Attachment "E"; Assignment, Assumption and Recognition Agreement Pgs 1-3. See Pg 1 paragraphs 1&4, Pg 2 paragraphs (b), Pg 2-3 paragraph (f)  made a part hereof and attached hereto as Attachment "F".

47.     In a letter from HSBC to the Cocrofts dated January 21, 2010, HSBC informed the Cocrofts that there was yet another assignee, Roundpoint Mortgage, servicer for the Trust. This servicer never contacted Plaintiffs and whatever entity assigned to Roundpoint did not provide notice of the assignment to the Cocrofts. *See,* Letter from HSBC made a part hereof and attached hereto as Attachment "G".

48.     Between April 17, 2007 and July 1, 2009, Countrywide, Countrywide Home Loans Servicing, Countrywide Home Loans, Inc. and HSBC Bank USA, NA, as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates, engaged in a pattern of activity that affected interstate commerce in the form of originating, packaging, pooling, securitizing and selling loans and mortgages, mortgaged promissory notes, securitized mortgages and notes pursuant to assumption and assignment agreements ("AAR") and pooling and servicing agreements ("PSA"), trusts and other products that were marketed and sold to unsuspecting borrowers and others in the financial industry and in the private sector, including Plaintiffs.

49.     Countrywide, its successors or assigns failed to provide notice to Plaintiffs of any said assignments or other assignments that Plaintiffs may not be aware of.

50.     Defendants engaged in a pattern of deceptive practices in the origination of the loan, the manner in which it made clandestine assignments such as the transfer into the trust, violated the terms of the Trust.

51.     HSBC engaged in deceptive practices and conspired with MERS in utilizing McAllister as authorized agent for MERS while at the same time working also for HSBC via his place of employment.

The Rescission

52.     Countrywide's failure to make clear and accurate disclosures triggered an extended right of rescission and in accordance with TILA requirements, on July 1, 2009 Plaintiffs exercised their right to cancel the mortgage by notifying all parties to this lawsuit, BOA as successor to Countrywide and MERS. 12 C.F.R. 226.15(a)(2) and 226.23(a)(2) .

53.     Further, in accordance with TILA's strict requirements, on July 24, 2009 Plaintiffs duly executed their quit claim deed and reconveyance release to the security instrument, mortgage number 00016665393904007, filed these documents with the Cook County Recorder of Deeds and gave notice of Plaintiffs' "Affidavit Notice of Right to Cancel" to BOA as successor to Countrywide and MERS.

54.     Despite Plaintiffs' rescission that followed the notice procedure set forth in the TILA statute precisely,   Defendants including, BOA ,MERS and HSBC ignored their duties and responsibilities under TILA, HOEPA, and all other Federal and Illinois consumer protection laws in that they failed to object to the rescission within 20 days as specified by Reg. Z and 15 U.S.C. 1635(b).

55.     Despite Plaintiffs' notice of rescission dated July 1, 2009 and Plaintiffs recordings with the Cook County Illinois Recorder of Deeds, Countrywide and/or its successors and/or assigns

11

and MERS conspired and assigned the note to subsequent assignees.[3] Allegedly MERS assigned to HSBC on October 8, 2009.

56.     In a letter dated November 23, 2009, Defendant HSBC informed Plaintiffs that HSBC did not have a contractual relationship with Plaintiffs. *See,* letter from HSBC attached hereto and incorporated herein as Attachment "H".

57.      This letter further informed Plaintiffs that HSBC did not have an account with Plaintiffs. See, Attachment "H" supra.

The unfair and deceptive acts

58.     Despite Plaintiffs' July 1, 2009 notice of rescission and public recordings dated July 2, 2009 and July 24, 2009, Countrywide, and/or its successors and/or assigns and MERS assigned the note to subsequent assignees.[4]

59.     HSBC and MERS conspired, misled and deceived Plaintiffs. By using William McAllister, authorized agent of MERS, allegedly assigned the Note to HSBC on October 8, 2009. William McAllister of Pierce and Associates and authorized agent of MERS assigned the Note from MERS to The Trust. The Trust initiated a foreclosure lawsuit against Plaintiffs.

60.     HSBC initiated a foreclosure lawsuit against Plaintiff on January 19, 2010 and sent Plaintiffs a collection letter dated September 25, 2009 by and through Codilis and Associates law firm these Defendants created a conflict of interest.

---

[3] Except for the exact representations within this Complaint, Plaintiffs cannot be certain exactly which assignor entity assigned to which assignee entity as Plaintiffs were never provided notice of the Note's assignments from one entity to another.

[4] Except for the exact representations within this Complaint, Plaintiffs cannot be certain exactly which assignor entity assigned to which assignee entity as Plaintiffs were never provided notice of the Note's transfer from one entity to another.

61.     On December 17, 2009, MERS purportedly executed an assignment of the Note and Mortgage to the Trust. *See,* Attachment "C" supra.

62.     On or about February 19, 2010, Plaintiffs' submitted their "Nice Offer and Demands"[5] to Defendants. By that date, Defendants had, without notice to Plaintiffs, transferred, assigned or otherwise submitted the Note into a pool as securities known as the Deutsche ALT-A Mortgage Trust, Series 2007-OA3 Mortgage Pass-through certificates in contradiction of Plaintiffs' ownership interest.

Schemes of racketeering

63.     Upon information and belief Defendants all engaged in and participated in a scheme of racketeering using the U.S. mail, wire transfers and other means to engage in trade related to residential refinance of mortgages which included the following:

a.      clandestine wire transfers;

b.       transferring notes and mortgages including the present Note via assignments and through successive ownership or control of various Countrywide entities, MERS, Countrywide Bank FSB, Countrywide Home Loans, Inc., Bank of America; and HSBC USA, NA as trustee of Deutsche ALT-A Mortgage Trust, Series 2007-OA3 Mortgage Pass-through certificates;

c.      Failure to disclose new owner(s) of the Note and/or Mortgage to Plaintiffs;

d.      Misstatements of material disclosures on the TILA that was given to Plaintiffs at the Closing;

e.      Continued the practices to numerous other mortgagors in many other home refinances;

---

[5] Also known as a Qualified Written Response ("QWR").

f.      Failed to insure appropriate underwriting techniques to avoid lending based on inflated appraisals or failed to utilize appropriate due diligence;

g.      Intentionally designed the Note to entice Plaintiffs to refinance more than their income could actually support;

h.      Intentionally designed the Note to entice Plaintiffs to refinance a Note that by its nature caused negative amortization;

64.     Plaintiffs were induced to refinance their loan into an adjustable rate mortgage with Countrywide.

65.     Plaintiffs reviewed the closing documents and the TILA disclosures. It was Plaintiffs' understanding that the TILA disclosures were accurate and fairly stated without deception on the part of the Lender. Plaintiffs never intended to pay more than $5,000.00 above and beyond the amount disclosed as finance charge. Plaintiffs were capable of and would have acquired a refinance loan with another lender at a lower price if Plaintiffs had known the accurate price of financing.

66.     Defendant HSBC assigned the Note with knowledge or with reckless disregard for actual knowledge that the loan was not properly endorsed or delivered.

67.     Defendant HSBC assigned the Note to the Trust while aware or with reckless disregard of actual or constructive knowledge that the loan was non-performing at the time it was submitted to the Trust.

68.      Subsequent to Plaintiffs' notice of right to rescind, Defendant HSBC assigned the Note to the Trust while aware or with reckless disregard of actual or constructive knowledge of the fact that Plaintiffs had exercised Plaintiffs' right to rescind the Note.

14

69.     Defendant HSBC instituted a foreclosure lawsuit against the Cocrofts despite having sent Plaintiffs a letter stating that HSBC did not have any indicia of ownership of a note payable by Plaintiffs. *See,* Attachment "H" supra.

70.     On information and belief Countrywide, MERS and HSBC and BOA's acts constitute conspiracy and unlawful engagement and participation in an illegal practice; a scheme of racketeering that is oppressive, unethical, offends public policy with far reaching negative economic impact on Plaintiffs and other consumers.

71.     On information and belief Countrywide, MERS and HSBC conspired to cause the Note to be placed in the Trust subsequent to the Trust's Cut-Off date of May 1, 2007.

72.     On information and belief Countrywide, MERS and HSBC conspired to cause the Note to be placed in the Trust subsequent to the Trust's Closing date of May 31, 2007.

73.     The present Note was assigned or otherwise securitized and included in the pool and subsequently into the Trust despite the Pooling and Servicing Agreement's provision that states, "loans that are adverse to the Certificate Holders or NIMS Insurer shall not be selected to be deposited  into the Trust." *See*, Pooling and Servicing Agreement p. 86, Attachment "E" supra.

74.     Neither HSBC, Countrywide, MERS, BOA nor any of Countrywide's successors, transferees, assigns or other interested entities responded, in accordance with TILA requirements, to Plaintiffs' cancellation of Plaintiff's Note.

75.     The note had been separated from the mortgage from its inception.

76.     Upon information and belief Defendants failed to accurately represent this Note upon presenting and delivering it to a pool of securities and having it assigned to the Trust.

77.     In accordance with Plaintiffs' rights under TILA, around September 30, 2009 Plaintiffs submitted a Qualified Written Response to HSBC via its attorneys, Codilis and Associates.

78.     Plaintiffs' Nice Offer and Demand was sent to HSBC on February 19, 2010.

79.     Furthermore, BOA failed to return the funds Plaintiffs contributed at the closing in violation of §1635(b).

80.     Despite the foregoing, Defendant HSBC, initiated a foreclosure lawsuit in state court to seize Plaintiffs' property.

**COUNT I**
**TRUTH IN LENDING ACT VIOLATIONS**

81.     Plaintiffs incorporate by reference all the foregoing allegations in paragraphs 1 through 80 into this paragraph 81.

82.     Designed for the protection of consumers, the Truth in Lending Act requires lenders to make clear, conspicuous and accurate disclosures of loan terms as set forth in CFR 226.18 et seq.

83.     Defendants had a duty to comply with the Truth in Lending Act. 12 CFR 226.15(d)(2), 226.23(d)(2), 226.23(g) and 15 U.S.C. §1635(b) Reg. Z, 12 C.F.R. §226. et seq.

84.     On February 17, 2007, Defendant Countrywide failed to comply with its duty when it failed to disclose the identity of the true lender as required by Regulation Z. 12 CFR 226.18(a).

85.     Defendant failed to comply with its duty under TILA when it misstated the finance charges disclosed on the TILA disclosure Form at the Closing.12 C.F.R. 226.18 *et seq*.

86.     Defendant's inaccurate disclosure was excessive and more than the statutory tolerances allowed by TILA which triggered the extended right of rescission as provided by TILA.

87.     Defendant's inaccurate disclosure was material in that it was more than $100.00 and more than $35.00 below the actual finance charge. 12 CFR 226.23(g); 15 U.S.C. 1635 (i)(2).

88.     The inaccurate disclosure induced Plaintiffs to contract with Countrywide to Plaintiffs detriment when Plaintiffs were qualified to borrow from and would have borrowed from a lender with lower finance charges.

89.     When Plaintiffs became aware that Defendant Countrywide had violated the disclosures required by TILA and Reg. Z[6], Plaintiffs gave notice of Plaintiffs' rescission on July 1, 2009, to MERS and BOA and later on September 30, 2009 to HSBC.

90.     The Cocrofts strictly complied with TILA's technical requirements in the exercise of their right to rescind within the three year extended right to rescind period.

91.     Within 20 days of receipt of a Borrower's Affidavit Notice of Right to Cancel, the Lender had a duty to respond. 15 U.S.C. § 1635(b).

92.     Defendants failed to respond within 20 days of receipt of Plaintiffs' Affidavit Notice of Right to Cancel dated July 1, 2009 and September 30, 2009 pursuant to 15 U.S.C. § 1635(b), after being properly noticed via U.S. Certified Mail with return receipt. *See*, U.S. Certified Mail with return receipt attached hereto and incorporated herein as Attachment "I".

93.     Plaintiffs became aware of Defendant's TILA violations in June 2009.

94.     Defendant BOA, as successor to Countrywide, is liable for Countrywide's TILA disclosure violations.

95.     Countrywide violated TILA, 15 U.S.C. §1601 *et seq*.; Reg. Z, 12 C.F.R. 226 *et seq.* when it:

(a)     failed to disclose the true lender;

(b)     failed to disclose the accurate finance charges for the Loan when the accurate charges were outside the statutory "tolerances";

---

[6] All references to TILA include Regulation Z whenever applicable.

17

(c)     disclosed materially understated finance charge;

(d)     failed to respond to Plaintiffs´ notice that Plaintiffs exercised their extended right of rescission.   12 C.F.R. 226.23(a)(3);

96.     According to the TILA statute, the Note automatically became void and the lender had 20 days within which to take any and all actions necessary to reflect the termination of the security interest.

97.     After being properly noticed via U.S. Certified Mail with return receipt, of Plaintiffs' Affidavit Notice of Right to Cancel dated July 1, 2009 and September 30, 2009, Defendants failed to respond within 20 days pursuant to 15 U.S.C. § 1635(b).  *See*, U.S. Certified Mail Attachment "I" supra.

98.     The lender failed to honor its obligation within 20 days thereby violating the law when it failed to return the money Plaintiffs provided at the closing as earnest money or down payment as well as all other monies that grew out of that transaction.

99.     Countrywide failed to acknowledge Plaintiffs' rescission.

100.     Since Countrywide did not take possession of the property within 20 days of Plaintiffs' rescission, Plaintiffs are entitled to retain the property.

101.     The rescission remedy runs against all assignees. 15 U.S.C. §1641(a).

102.     In a letter dated November 23, 2009, Defendant HSBC responded to the rescission stating that it did not have any note or any other relationship with Plaintiff. *See*, Attachment "H" supra.

103.     Violations of TILA are strict liability offenses.

104.     Upon rescission Defendant's security interest that gave rise to the right of rescission became void.

18

105.    Plaintiffs are entitled to cancellation of Defendants' security interest in the Property.

106.    Plaintiffs are entitled to the return of monies paid on the loan.

107.    Despite its denial of a relationship with the Cocrofts, HSBC nevertheless instituted foreclosure against Plaintiffs on January 19, 2010 alleging a position diametrically opposed to HSBC's denial of any contractual relationship to the security interest as asserted in its letter to Plaintiffs dated November 23, 2009.

108.    Defendants' failure to comply with the requirements to respond within 20 days as set forth in 12 C.F.R. 226.23 (d)(2) gave rise to additional rights to Plaintiffs and additional liabilities to Defendants.

109.    As a result of Defendant's failure to comply with the requirements set forth in the statute 12 C.F.R. 226.23(d)(1), Plaintiffs have no outstanding obligations to Defendants.

110.    The TILA violations were apparent on the face of the loan documents including the HUD1 RESPA  form which triggers protection for Plaintiffs and supports additional monetary damages against not only the Lender, but also the assignees. 15 U.S.C. §1641(a)(1)and (2).


      **WHEREFORE,** Plaintiffs, DAVID COCROFT AND VEYNELCIA COCROFT, pray
      that this Honorable court enter an order granting Plaintiffs

- Attorneys' fees and court costs
- Statutory damages, twice the amount of the charge, a minimum of $200 but no more than $2,000
- Actual damages
- Double the correctly calculated finance charge (but not less than $100 or more than $1,000 for individual actions)
- Rescission of the contract; and
- Any and all other relief this honorable court deems just.

## COUNT II
## FAILURE TO COMPLY WITH DUTY TO RESPOND TO RESCISSION NOTICE AS REQUIRED BY TILA, 15 USC 1635(b); 12 CFR 226.15(d)(2), 226.23(d)(2) and Regulation Z

111.    Plaintiffs incorporates paragraphs 1-110 as this Paragraph 111 of this count.

112.    Within 20 days of receipt of a Borrower's Affidavit Notice of  Right to Cancel, dated July 1, 2009, the Lender, Countrywide, via BOA as successor and MERS was required by law to respond. 15 U.S.C. §1635(b).

113.    After being properly noticed via U.S. Certified Mail with return receipt, of Plaintiffs' Affidavit Notice of Right to Cancel dated July 1, 2009, Defendants BOA and MERS failed to respond within 20 days pursuant to 15 U.S.C. § 1635(b), *See*, U.S. Certified Mail, Attachment "I" supra.


   **WHEREFORE,** Plaintiffs, DAVID COCROFT AND VEYLENCIA COCROFT, pray that this Honorable court enter an order granting Plaintiffs

- Attorneys' fees and court costs
- Statutory damages as provided by statute, twice the amount of the charge, a minimum of $200 but no more than $2,000
- Actual damages
- Double the correctly calculated finance charge (but not less than $100 or more than $1,000 for individual actions).
- Rescission of the contract;
- Void the security agreement and any and all rights BOA or MERS would otherwise  have in the security;
- Any and all other relief this honorable court deems just.


## COUNT III – FEDERAL R.I.C.O. ACT VIOLATIONS

## Breach of Implied Covenant of Good Faith and Fair Dealing, State of Illinois and Federal Consumer Fraud's Act

20

114.    Plaintiffs incorporate paragraphs 1-113 as this Paragraph 114 of this count.

115.    Defendant Countrywide, (presently BOA), BOA, MERS, HSBC and the Trust are enterprises engaged in interstate commerce, as well as trade and commerce within the meaning of the Illinois Consumer Fraud and Deceptive Practices Act (815 ILCS 505/1 *et seq.)* in that they advertised, solicited, offered for sale and provided residential mortgages to Illinois consumers either directly or indirectly and participated in schemes resulting from the origination and/or delivery of mortgages in Illinois.

116.    Plaintiffs' Loan, executed on April 17, 2007, between Plaintiffs and allegedly Countrywide, constitutes a contract and an "unlawful debt" in that Defendant Countrywide:

(a)      failed to identify the true lender in violation of 12 C.F.R. 226.18(a);

(b)      allowed Plaintiffs TILA disclosures to reflect illegal finance charges and assessed such illegal charges against Plaintiffs in violation of  15 U.S.C. § 1601(a);

(c)      failed to disclose all finance charges in the TILA disclosure statement in violation of 12 C.F.R. 226.(d)(1);

(d)       On information and belief, Defendants, Countrywide, BOA, MERS, and HSBC are liable to the Cocrofts  for deceptive practices buried in documents that Plaintiffs are not privy to such as the documents that show the chain of title fails to support HSBC's position that HSBC is the lawful titleholder.

(e)      HSBC sued Plaintiffs in state court, case number 10 CH 02309, and there presented the Note that indicates MERS assigned and endorsed to Countrywide and that Countrywide signed in blank. According to the trust agreement the Trust was closed prior to October 8, 2010, the date MERS allegedly assigned the Note to HSBC as trustee according to the Trust Purchase Agreement.

(f)     The Assumption and Assignment Agreement ("AAR"), the Mortgage Purchase Agreement dated May 31, 2007, The Pooling and Servicing Agreement dated May 1, 2007 that govern and/or identify the mortgages that back the securities that are in the pool held by HSBC indicates that the note was assigned by various entities without Plaintiff ever being noticed. On information and belief the Cocrofts have been deceived and defrauded.

(g)     According to letters HSBC sent to the Cocrofts via HSBC's attorneys, Codilis and Associates dated November 23, 2009 HSBC did not hold title to the Cocroft's property. Yet, MERS purportedly assigned the Note to the Trust on October 8, 2010.

117.    Plaintiff's loan constitutes an "unlawful debt"  and it lacks good faith and fair dealing in that Countrywide allowed its underwriters to approve a loan that it knew or should have known was appraised in excess of its market value in that the appraisal overstated the square footage of the property. *See,* pages 1-3 of "Certified Appraisal" attached hereto and made a part hereof as Attachment "J".

118.    Plaintiffs' loan constitutes an "unlawful debt" and it lacks good faith and fair dealing in that Countrywide allowed its underwriters to approve a loan that it knew or should have known would balloon in such a manner that it would become too burdensome for Plaintiffs' income to keep paid in violation of HOEPA.

119.    Defendants Countrywide, MERS, BOA and HSBC are enterprises engaged in a continuous pattern of racketeering activities that violate rights of thousands of mortgagors, including Plaintiffs as evidenced by legends of individual and class action lawsuits brought against Defendant Countrywide and those brought against Defendant BOA, its successor, in that Countrywide engaged in deceptive business practices regarding homeowner's  notes and

mortgages during the period that Plaintiffs' loan was  issued on April 17, 2007 before as evidenced by the PSA, the Trust Purchase Agreement, the Trust Assignment, Assumption and Recognition Agreement and thereafter[7].

120.    Defendants and each of them were participating in and have participated in an unfair scheme of racketeering as that term is defined in RICO 18 U.S.C. §§1961, *et seq*.  The lawsuits referred to in the previous paragraph of this complaint have been brought by attorneys general in Illinois, Nevada, Arizona and attorneys general of numerous other states and numerous individuals throughout the country alleging fraudulent and deceptive practices that violate state consumer protection laws, TILA violations, and other consumer protection laws.   18 U.S.C. §1962. Citations available.

121.    It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title, 18 United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. §1962 prohibited activities.

122.    Here, Countrywide conspired with BOA and HSBC and each of them to seize Plaintiff's private property under the guise of a "lawful debt collection", to unlawfully convert real property from Plaintiffs, the lawful owner, to HSBC, in violation of 18 U.S.C. § 1962 (a),(b),(c),and (d), by means of fraudulent, deceptive and unfair business practices, without due process of law.

---

[7] Assert Attorneys General of Illinois, Arizona, Nevada, not only class action lawsuits, but  lawsuits to enforce agreements that assert violations

123.     The scheme, as it relates to Plaintiffs, was in place and active at the beginning of the loan application process. It continues through the unlawful foreclosure process in the Illinois Circuit Court of Cook County, case number 10 CH 02309, on January 19, 2009 to seize and sell Plaintiffs' property at a foreclosure sale.

124.     During the period of application leading to the Closing on April 17, 2007, Defendant Countrywide asserted that it was the Lender. In the Mortgage MERS acted as the assignee, solely in one paragraph, then further into the document it identifies MERS as the nominee on behalf of Countrywide. As of April 27, 2009 BOA closed the deal as purchaser/successor to Countrywide and later acted as assignor to HSBC who presently acts as Trustee.

125.     That is the public chain of assignees, but actually, according to documents under control of the Securities and Exchange Commission ("SEC") it appears on information and belief, that various other parties have been the named assignor of the subject loan. *See*, Deutsche Trust Assumption, Assignment and Recognition Agreement attached hereto as Attachment "K".

126.     The Deutsche Trust Assumption, Assignment and Recognition Agreement ("AAR") entered into on May 31, 2007 shows that the subject mortgage had been assigned to DB Structured Products who, as assignor, assigned the Loan to MortgageIT Securities pursuant to a Mortgage Loan Purchase Agreement ("MLPA") dated May 31, 2007. That AAR Agreement further indicates that the Assignee would transfer all rights, title, interest and obligations in and to the assigned loans, which includes the present Loan, to HSBC Bank, USA, National Association as trustee ("Trustee") for holders of Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates (the "Certificateholders") pursuant to Pooling and Servicing Agreement dated May 1, 2007 (the "Pooling and Servicing Agreement" or "PSA") among the Assignee, as depositor, the Trustee, Wells Fargo as master Servicer and

securities administrator and Clayton Fixed Income Servicers, Inc., as credit risk manager. *See,* www.consusgroup.com for Trust Agreement; PSA.

127.    At all times relevant to this matter Countrywide via BOA, MERS and HSBC  knew or should have known of its duty to inform Plaintiffs of any assignment of their Note to a different entity, but Countrywide failed to do so in violation of  R.E.S.P.A. 12 U.S.C§.  2605(a).

128.    Further, despite being informed of Plaintiffs' written notice of rescission dated July 1, 2007  and related documents that followed on July 24, 2007, Countrywide via BOA and each Defendant failed to respond in any manner despite the requirements of 15 USC 1635(b), 12 CFR 226.15(d)(2), and 226.23(d)(2). After expiration of the time within which to respond, Defendant HSBC responded with a letter dated November 23, 2009 stating that HSBC had no contractual relationship whatsoever with Plaintiffs.

129.    Nevertheless, less than two months later, on January 19, 2010, HSBC filed a lawsuit against Plaintiffs in the Illinois Circuit Court of Cook County to foreclosure the present mortgage.

130.    HSBC bases its right to foreclose the mortgage on the same faulty Mortgage that Countrywide used as a general practice in its extensions of refinance credit and primary home loans in Illinois and other states in the year 2007 and beyond.

131.    These mortgages identified MERS, "solely as the nominee…" this same mortgage instrument later identified MERS as the mortgagee.

132.    Mortgagees, including the Cocrofts find the language confusing as to who the Lender is, who the mortgagee is, who has what authority when the Note is separated from the Mortgage and overall, what entity or entities are truly interested parties.

133.    Nominees and mortgagees are different words with different meanings and with different legal effects.[8]

134.    On information and belief Defendants, Countrywide, MERS, HSBC and BOA, as successor to Countrywide deliberately conspired to develop the products and the methodology to carry out the schemes here alleged effective against Plaintiffs starting at the time of their application in 2007, with the intent that Plaintiffs and others similarly situated would unknowingly or via take it or leave it contracts that enriched Defendants via convoluted and confusing processes and procedures that would leave the Cocroft's without knowledge or resources for asserting rights against Defendants.

135.    These acts indicate that Defendants committed crimes and/or civil violations against Plaintiffs by their calculated, deliberate and conspiratorial actions including unlawful attempts to convert Plaintiffs private title and seizure of Plaintiffs private property, under the guise of a "lawful debt collection", and to unlawfully convert real property from its lawful owner to a corporation, in violation of 18 U.S.C. § 1962 (a),(b),(c),and (d), by means of fraudulent, deceptive and unfair business practices, without "Due Process of Law" in that Defendants and each of them:

    (a) made false disclosures on April 17, 2007 and benefitted financially therefrom;

    (b) knowingly allowed their underwriters to fail to perform appropriate due diligence relative to their appraisals including Plaintiff's that was over inflated;

    (c) deliberately assigned the Note without notice to Plaintiffs ;

---

[8] A nominee is a person or group that holds title to a security or piece of real estate but is not the true owner. A mortgagee is an organization that lends money to a borrower by a mortgage agreement.

(d) deliberately drafted confusing and misleading documents that Plaintiffs and other borrowers either signed or were left without a loan due to borrowers, including Plaintiffs, having no negotiation power as it relates to the loan documents;

(e) deliberately developed and marketed through interstate commerce, loan products including Plaintiffs that are inherently illegal in that the Loan negatively amortizes and;

(f) knowingly engaged in an enterprise that placed the Note into MERS, a company with a system for holding mortgages that violates 12 U.S.C. §2605(a) in that it vitiates the centuries old county recorders offices that strictly tracked transfers of interest in land which facilitated Countrywide's and BOA's ability to absolve itself of the legal requirement to notify mortgagors as to when their mortgages have been assigned. R.E.S.P.A. 12 U.S.C. § 2605(a).

136. Further, in violation of consumer protection laws as identified herein BOA through Countrywide induced Plaintiffs to

(a) rely on Defendants or Defendant's agent(s) representations that the Lender was Countrywide

(b) that the loan product memorialized in the Note was a good and legal product particularly for Plaintiffs

(c) that the appraisal was legitimate and that the money borrowed was for the fair market value of their home plus the amount necessary to pay off their unsecured debt as required by the Lender.

137.    Defendants, together, through deliberate and organized efforts conspired to develop and market loan products such as the Cocroft's Payment Advantage Fixed/Adjustable Rate Mortgage Program commonly known as Pick a Payment that by its nature negatively amortizes dated April 17, 2007.

138.    Defendants together, through deliberate and organized efforts conspired and developed procedures to dupe the Cocrofts and other unknowing persons seeking mortgage backed loans and refinances of loans backed by mortgages of family residences for primary residences and other personal purposes in violation of the Federal RICO Act. 18 U.S.C. § 1962 (a),(b),(c), and (d) and State and Federal Consumer Protection Acts.

139.    Defendants violated the Federal R.I.C.O. Act 18 U.S.C. § 1962(a)(b)(c)(d) by unlawfully attempting to seize rights to Plaintiffs private title to Plaintiffs private property via the state foreclosure action, case number 10 CH 02309.

140.    Defendants continued collection activities against Plaintiffs, in violation of the  U.S. Collection Code  U.S.C. § 1962(a)(b)(c)(d) after Plaintiffs provided proper notice dated July 1, 2007  in accordance with Truth In Lending Law that Plaintiffs had exercised their Right of Rescission.

141.    Plaintiffs were unable to close on a contract to purchase the Property because of the unfair and illegal lis pendes and other recordings that clouded Plaintiffs' title. *See,* Contract to Purchase made a part hereof and attached hereto as Attachment "L".


    **WHEREFORE,** Plaintiffs respectfully request this honorable court to enter an Order finding Defendant HSBC, successor to Countrywide liable to Plaintiffs in accordance with the remedies available under the Truth in Lending Act, RICO, Illinois State and Federal Consumer

Protection Acts, in violation of the implied covenant of good faith and fair dealings and grant

Plaintiffs:

A.  15 U.S.C. § 1640(a) "an amount equal to the sum of, (1) "any actual damage Plaintiffs sustained by such person as a result of the failure;" (2)(A)(i) "in the case of an individual action twice the amount of any finance charge in connection with the transaction."

B.  recover threefold the damages he sustains and the cost of the suit, including reasonable attorney's fee in compliance with 18 U.S.C. § 1964(c).

C.  award Plaintiffs actual, statutory, and punitive damages.

D.  award Plaintiffs actual damages for all court costs and litigation expenses connected to this action

E.  award Plaintiffs twice the amount of any finance charge paid to Countrywide Bank, FSB./ Bank of America Home Loans; and

F.  all closing costs paid at closing;

G.  an accounting of all monies paid by Plaintiffs to Countrywide Bank, FSB./Bank of America Home Loans, and LandAmerica Lawyers Title, pursuant to 15 U.S.C. § 1640(a)(1)(2)(A)(i);

H.  award Plaintiffs statutory damages three times the dollar amount of ($465,000.00), which is the purchase price Plaintiffs paid for their home on February 10, 2006;

I.  Report that Ownership vests in the borrowers and they are no longer required to pay the loan in accordance with C.F.R. § 226.15(d)(2), and 15 U.S.C. 1635(b);

J.  Order  MERS, Inc. and HSBC Bank USA, NA, as Trustee  of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates, to take any

29

necessary or appropriate action to appropriately and accurately reflect the fact that the security interest was terminated by rescission in accordance with 15 U.S.C. § 1635(b); Reg. Z-226.15 (d)(2), 226.23(d)(2) which requires release of documents creating the security interest in the public record leaving free and clear title to Plaintiffs David Cocroft and Veynelcia Cocroft; and

K.      issue an order to Bank of America Home Loans/Countrywide Bank, FSB.(BAC Home Loans Servicing, servicer of Refinance Mortgage Loan #00016665393904007 dated April 17, 2007, to immediately remove all negative, erroneous, inaccurate information that they have reported to consumer reporting agencies against Plaintiffs, including but not limited to, Equifax, Experian, and TransUnion, regarding Refinance Mortgage Loan #00016665393904007 dated April 7, 2007.

L.      Money damages for breach of implied covenant of good faith and fair dealing including a proper amount for the shortage of square footage in the house rather than the price paid based on the unfair appraisal.

M.      Money damages for breach of implied covenant of good faith and fair dealing including the loss of a sale due to Defendants' unlawful lis pendes and other recordings after notice of Plaintiff's cancellation.

## COUNT IV

**Violation of Home Ownership and Equity Protection Act
12 C.F.R.§226.32et seq., 15 U.S.C. §§ 1637
("HOEPA") against all Defendants**

142.    Plaintiffs incorporate paragraphs 1-141 as this Paragraph 142 of this count.

143.     This is a HOEPA Loan is protected by the provisions of HOEPA in that the points and fees triggered HOEPA protection and the disclosures failed to reflect the true amount.

144.     HOEPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt…" including the "false representation of … the character, amount or legal status of any debt…" and the "threat to take any action that cannot legally be taken…" 15 U.S.C. 1692e.

145.     Nevertheless, as a condition to securing the Loan, Defendant Countrywide required Plaintiffs to consolidate their third party debts into the Loan.

146.     Consolidating Plaintiffs' third party debt into the Loan caused injury to Plaintiffs that could have been avoided by leaving the debt as unsecured.

147.     Consolidating Plaintiffs' third party debt into the Loan converted Plaintiff's unsecured debt into secured debt. *See*, RESPA and HUD-1 Attached and made a part hereof as Attachment "M"

148.     Consolidating Plaintiffs' third party debt into the Loan caused an economic hardship to Plaintiffs.

149.     The practice of consolidating third party unsecured debt into Plaintiffs' loan and into loans of others similarly situated contributed to the devastating and widespread negative impact that predatory lending caused Plaintiffs, as well as to the economic condition across the nation, in general during the period of time this matter covers.

150.     Defendant's required Plaintiffs' to borrow enough money in the Loan to pay off Plaintiffs' unsecured debt. This is a forced pay-off which constitutes an unfair trade practice. The forced pay-off requirement is predatory and unfair.

151.     HOEPA prohibits such forced trade practices.

31

152.    Further, Defendants violated HOEPA when the terms of the Loan resulted in negative amortization.

153.    Countrywide's failure to deliver an accurate disclosure and other HOEPA violations triggered the extended three year right to rescind the Note.

154.    Countrywide's failure to deliver an accurate disclosure notice and other HOEPA violations gave rise to enhanced money damages as described in 15 U.S.C. § 1640 (a)(4) or all payments made by Plaintiffs.

   **WHEREFORE,** Plaintiffs, David and Veynelcia Cocroft respectfully request this honorable court to enter an Order finding Defendant HSBC, successor to Countrywide

   (a) made a loan to Plaintiff for more than the value of the home;

   (b) made a loan to Plaintiffs with prohibitive negative amortization terms;

   (c) made a loan without underwriter's due diligence regarding Plaintiff's ability to repay;

   (d) made a loan based on the equity in the home rather than being based on underwriter's due diligence regarding Plaintiffs' ability to repay;

   (e) made a loan with unreasonable padding in that Countrywide/Bank of America required Plaintiffs to include their unsecured debt in the Loan;

   (f) finding Defendant BOA and HSBC liable to Plaintiffs in money damages for triple the amounts  and amounts in accordance with all remedies available under the Home Ownership and Equity Protection Act; and

   (g) any and all remedies this honorable court deems just and appropriate.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH
## AND FAIR DEALING

155.    Plaintiffs incorporate paragraphs 1-154 as this Paragraph 155 of this count.

156.    MERS, BOA, HSBC Bank USA, and the Trust contributed to HSBC's recording of a fraudulent assignments of Plaintiffs' title on December 17, 2009 at the Cook County Registrar, as document number #0935105138, to HSBC Bank as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates.

157.    On information and belief, Defendants through fraudulent disclosures failed to identify the true lender, failed to give notice of the transfer of Plaintiffs' Note to various unnamed assignees including HSBC, fraudulently provided false information to the Cook County Recorder of Deeds, in the regular course of doing business with Plaintiffs arising from the mortgaged loan transaction that is the basis of this lawsuit, in violation of 12 CFR Part 226.15(d)(2), 226.23(d)(2), and 15 U.S.C. § 1635(b) and Federal and State of Illinois consumer fraud laws. 815 ILCS 505/2.

158.    On information and belief, Defendants concealed and omitted the true fees, points and finance charges it assessed against Plaintiffs.

159.    After Defendants were properly noticed of Plaintiffs having exercised their "Right of Rescission" of refinance mortgage  #00016665393904007, dated April 17, 2007, pursuant to 12 C.F.R. 226.15(a)(2) and 226.23(a)(2), Plaintiffs also noticed Defendants of Plaintiffs Affidavit Notice of Revocation of Power of Attorney and Affidavit Notice of Removal of Trustees, Assignees, and Mortgagees, dated July 1, 2009, that were attached to, and recorded with, Affidavit Notice of Right to Cancel, dated July 1, 2009.

33

160.    After being duly noticed via U.S. Certified Mail, with return receipt, of Plaintiffs having exercised "Right of Rescission" Defendants, MERS, via HSBC Bank USA recorded a fraudulent assignment of rights to refinance mortgage.

161.    After being duly noticed via U.S. Certified Mail, with return receipt, of Plaintiffs having exercised their Right of Rescission, Defendants, MERS, and/or HSBC Bank USA filed an unlawful foreclosure lawsuit against Plaintiffs in the Circuit Court of Cook County, County Department, Chancery Division, Case No. 10 CH 02309, in total disregard to the rule of law.

162.    By continuing collection activities against Plaintiffs, in Violation of Truth In Lending Law 15 U.S.C. § 1635(b), 12 CFR Part 226.15(d)(2), 226.23(d)(2), after Defendants have been properly noticed of Truth In Lending Law and Plaintiffs having exercised their Right of Rescission of Refinance Mortgage Loan # 00016665393904007 dated April 17, 2007 (Exhibits A), and

163.    Defendants without grant of ownership, a commercial debt instrument, or a legal equity relationship between David Cocroft and Veynelcia Cocroft and, HSBC Bank USA, N.A. as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates; or a grant of ownership, a commercial debt instrument, or a legal equity relationship, between David Cocroft and Veynelcia Cocroft and HSBC  initialized their complaint against Plaintiffs, in violation of 12 CFR Part 226.15(d)(2), 226.23(d)(2), and 15 U.S.C. § 1635(b).

164.    Defendant, HSBC Bank USA, N.A. as Trustee of the Deutsche ALT-A Mortgage Loan Trust, Series 2007-OA3 Mortgage Pass-through Certificates, refused to produce, and/or to make disclosures required by law, according to Plaintiffs "Nice Offer and Demands".

34

WHEREFORE, Plaintiffs, David Cocroft and Veynelcia pray this court to enjoin Defendants from further collection activities and order Defendants to provide all remedies available under federal and state consumer protection laws.

Date: 8th day of January 2010

/s/ LaOuida Glover_____
LaOuida Glover

*Counsel for Plaintiffs*

LaOuida Glover
Glover Law Office
P. O. Box 121
Steger, Illinois
312.842.0001
Attorney number 6212252