**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID COCROFT and** | ) | |
| **VEYNELCIA COCROFT** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 3408** |
| | ) | |
| **HSBC BANK USA, N.A., as Trustee** | ) | |
| **of the Deutsche ALT-A Mortgage** | ) | |
| **Loan Trust Series 2007-OA3,** | ) | |
| **MORTGAGE ELECTRONIC** | ) | |
| **REGISTRATION SYSTEMS, INC.,** | ) | |
| **BANK OF AMERICA, N.A.,** | ) | |
| **BAC HOME LOANS SERVICING,** | ) | |
| **RM APPRAISAL SERVICES, INC.,** | ) | |
| **and RAY MISHAL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

David and Veynelcia Cocroft have sued HSBC Bank USA, N.A. (HSBC),

Mortgage Electronic Registration Systems, Inc. (MERS), Bank of America, N.A. (BA),

BAC Home Loans Servicing (BAC), RM Appraisal Services, Inc., and Ray Mishal.

Plaintiffs assert claims under the Truth in Lending Act (TILA), Real Estate Settlement

Procedures Act (RESPA), Fair Credit Reporting Act (FCRA), and Fair Debt Collection

Practices Act (FDCPA) as well as supplemental state law claims. Defendants HSBC,

MERS, BA, and BAC have moved to dismiss the claims against them. For the reasons

stated below, the Court grants the motion in part and denies it in part.

**Background**

The Court accepts the allegations in plaintiffs' third amended complaint as true

for purposes of resolving the motion to dismiss. *See Hallinan v. Fraternal Order of*

*Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).[1]

In 2007, the Cocrofts obtained a loan for $386,750 from Countrywide Bank, FSB

secured by a mortgage on the home they already owned in Country Club Hills, Illinois.

The loan closed on April 17, 2007. The Cocrofts allege that at the time of the closing,

Countrywide improperly failed to inform them of the real source of funding for their loan.

Plaintiffs also contend that Countrywide violated TILA by failing to inform them that they

had three days to rescind the loan and by failing to disclose the total sale price and

itemize the amount financed, as well as by failing to make unspecified prepayment

disclosures. The Cocrofts claim that Countrywide understated the total finance charges

for the loan by more than $5,000.

Plaintiffs claim that they learned of Countrywide's misrepresentations in June

2009. They decided to exercise their right under the provisions of TILA to rescind the

loan. On July 1, 2009, they mailed notice to that effect to BA, the successor to

Countrywide, and to MERS. The Cocrofts do not say what if anything happened as a

result of those notices, but on September 29, lawyers working for HSBC contacted

them and stated that HSBC was ready to begin foreclosure. HSBC claimed that it was

---

[1] Plaintiffs' third amended complaint references attached exhibits labeled A
through Z. But no exhibits are actually attached to the third amended complaint.
Plaintiffs' first amended complaint included attached exhibits labeled A through I, but
they do not correspond to the exhibits described in the third amended complaint.
Accordingly, the Court has not considered any of plaintiffs' exhibits in ruling on the
motion to dismiss.

the trustee of a trust that included their loan. The Cocrofts, however, contend that the transfer of their loan into the trust was defective. They sent HSBC's lawyers two cease and desist letters, notifying HSBC that they had rescinded the loan. They allege that after receiving one of the cease and desist letters, HSBC informed them that it had no interest in the loan and that they needed to contact the loan's servicer, Roundpoint Mortgage. Plaintiffs also sent a copy of the rescission documents to BAC, which they identify as the actual servicer of the loan. HSBC brought a foreclosure action in Illinois state court on January 19, 2010.

## Discussion

HSBC, MERS, BA, and BAC have moved to dismiss the Cocrofts' claims against them for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). A plaintiff "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Id.*

Plaintiffs assert ten claims, nine of which they bring against the movants.

## A.     Truth in Lending Act

The Cocrofts allege that they have rescinded their loan under TILA and seek to enforce the rescission and obtain damages and costs for the defendants' failure to recognize the rescission. Under TILA, a borrower who obtains a loan secured by a mortgage on his principal dwelling can rescind the loan for three days after closing or

3

the delivery of the TILA disclosures, whichever is later.  15 U.S.C. § 1635(a); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  If the TILA disclosures and forms are not provided to the borrower, the borrower's "right of rescission shall expire three years after the date of consummation of the transaction."  15 U.S.C. § 1635(f).

Defendants argue that plaintiffs' claim for rescission is untimely.  The loan transaction that plaintiffs seek to rescind closed on April 17, 2007.  Plaintiffs allege that they did not receive proper TILA disclosures, and if that is so, the time for rescission expired on April 17, 2010.  On July 1, 2009, within the three-year period, plaintiffs mailed notice to BA and MERS stating that they were rescinding the loan.  They also provided this notice to HSBC and BAC before April 17, 2010.  Plaintiffs did not, however, file this suit until June 3, 2010, more than three years after the loan closing. The question, then, is whether it was sufficient for plaintiffs to mail notices of rescission before their right expired or whether they had to bring this suit to enforce their rescission right prior to the end of the three-year period.

In *Beach*, the Supreme Court considered the three-year rescission period.  In that case, defendants in a foreclosure action sought to use their right of rescission as a defense.  *Beach*, 523 U.S. at 413–14.  The borrowers conceded that more than three years had passed since closing and thus they could not have brought an action for rescission.  They argued, however, that the three-year limitation did not prevent them from using rescission as a defense.  *Id.* at 415.  The Supreme Court acknowledged that generally statutes of limitations do not apply to claims asserted as defenses or setoffs, but it held that the limitation period in section 1635(f) was different.  *Id.* at 416–17.  The

Court ruled that the clear language of TILA provides that the right to rescission expires after three years, not just the ability to commence a lawsuit, and a borrower cannot assert that right in any way beyond the three-year period. *Id.* at 417.

"*Beach* addresses *when* the right to rescind expires and whether it can be tolled. It leaves unresolved the question of *how* a consumer must exercise that right to rescind—suit, or notice via letter." *Stewart v. BAC Home Loans Servicing, LP*, No. 10 C 2033, 2011 WL 862938, at *6 (N.D. Ill. May 10, 2011) (emphasis in original). TILA provides that a borrower exercises the right to rescission "by notifying the creditor, in accordance with regulations of the [Federal Reserve Board], of his intention to do so." 15 U.S.C. § 1635(a); *see Stewart*, 2011 WL 862938, at *5. The Federal Reserve's regulations provide that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). The regulations continue:

> (d) Effects of rescission.
>  (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>  (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

*Id.* § 226.23(d).

Courts defer to the Federal Reserve Board's regulations in interpreting TILA. *See Marr v. Bank of Am., N.A.*, 662 F.3d 963, 964–65, 968 (7th Cir. 2011) (describing Federal Reserve regulations as implementing regulations of TILA and holding that

disclosure requirements in regulations had to be applied strictly). *See also, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010); *Muro v. Target Corp.*, 580 F.3d 485, 493 & n.9 (7th Cir. 2009). The regulations indicate that as soon as the consumer notifies the creditor of the rescission, the transaction and its security interest become void. Although the creditor then has additional duties to return money and property, the creditor's failure to do so does not alter the fact that the transaction has been rescinded. The creditor has a duty to take actions to *reflect* the termination of the security interest, but those actions are not necessary to *effect* the termination. TILA and the regulations thus establish that rescission is accomplished by mailing notice to the lender. *Calvin v. Am. Fid. Mortg. Servs., Inc.*, 10 C 7213, 2011 WL 1672064, at *3 (May 3, 2011); *Stewart*, 2011 WL 862938, at *5. A borrower is not required to bring a lawsuit to exercise the right to rescind. *Calvin*, 2011 WL 1672064, at *3.

Plaintiffs thus exercised their right of rescission, in timely fashion, within the three-year period when they notified defendants that they were rescinding the loan. The fact that defendants did not honor the rescission, forcing plaintiffs to bring this suit to enforce their rescission rights, does not change this fact.

Other courts in this district have decided that, because a lender's failure to honor a rescission gives rise to a cause of action for damages under TILA, a plaintiff who has rescinded need only bring suit to enforce the rescission within one year after rescinding, because TILA establishes a one-year limitations period for damages actions. 15 U.S.C. § 1640(a), (e); *Calvin*, 2011 WL 1672064, at *3; *Stewart*, 2011 WL 862938, at *6; *Herzog v. Countrywide Home Loans (In re Hunter)*, 400 B.R. 651, 661 (Bankr. N.D. Ill.

2009). If it is appropriate to adopt this statute of limitations for an enforcement action, then the Cocrofts' suit to enforce their rescission is not subject to dismiss on limitations grounds.

Defendants argue that other courts have interpreted *Beach* and the requirements of TILA differently and have held that a plaintiff must actually file suit within three years to enforce a rescission, even if he has properly notified the lender of the decision to rescind within the three-year period. *See Sobieniak v. BAC Home Loans Servicing, LP*, _ F. Supp. 2d _, 2011 WL 6122318, at *4 (D. Minn. 2011) (referring to analysis adopted in *Stewart* as the minority approach); *Rosenfield v. HSBC Bank, USA*, Civil Action No. 10-cv-58-MSK-MEH, 2010 WL 3489926, at *6 (D. Colo. Aug. 31, 2010) (calling the reasoning of *In re Hunter* unpersuasive). These cases, however, fail to recognize that a borrower has exercised his right of rescission at the time he sends notice to the lender. *See Geraghty v. BAC Home Loans Servicing LP*, Civil No. 11-336 (JNE/TNL), 2011 WL 3920248, at *4 (D. Minn. Sept. 7, 2011); *DeCosta v. U.S. Bancorp*, Civil Action No. DKC 10-0301, 2010 WL 3824224, at *5 (D. Md. Sept. 27, 2010) (stating, contrary to the Federal Reserve regulations, that giving notice of rescission does not amount to exercise right of rescission).

Defendants argue that this Court should adopt the reasoning of the Ninth Circuit in *McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325 (9th Cir. 2012), which appears to be the only published federal appellate decision addressing the issue. In that case, the court held that even though the plaintiff had properly notified the lender of her decision to rescind the loan within three years, the three-year limit on the rescission

right barred her enforcement suit, which she filed more than three years after the closing of the loan. *Id.* at 1328–30. The court drew a distinction between the plaintiff's notice of rescission and the actual rescission, but it did not note any other steps that the plaintiff would have to take to effect rescission, except to sue for enforcement when faced with a recalcitrant lender. *Id.* at 1327. The Court respectfully disagrees. TILA and its regulations clearly provide that a borrower need only provide notice of rescission to the lender in order "[t]o exercise the right to rescind." 12 C.F.R. § 226.23(a)(2); *see* 15 U.S.C. § 1635(a).

Furthermore, the Ninth Circuit in *McOmie-Gray* appears to have ruled as it did because it considered itself bound by an earlier Ninth Circuit decision. *See McOmie-Gray*, 667 F.3d at 1329. In that case, *Miguel v. Country Funding Corp.*, 309 F.3d 1161 (9th Cir. 2002), the borrowers initially sent a rescission notice to the wrong party. *Id.* at 1162–63. The borrowers did not provide notice of the rescission to the proper party and did not file suit until more than three years after the loan closing. In addition, there was no evidence to show that the actual holder of the mortgage was aware of the rescission before the three-year period had expired. *Id.* at 1163. The court concluded that the rescission was not effective because the creditor did not receive notice during the three-year period. *Id.* at 1165. The present situation, where defendants do not contend they were unaware of plaintiffs' decision to rescind, is distinguishable.

Defendants next argue that only creditors and assignees can be liable under TILA and that therefore the Court should dismiss the TILA claims against MERS and BAC. 15 U.S.C. §§ 1640(a), 1641(a); *see Horton v. Country Mortg. Servs., Inc.*, No. 07

C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) (granting summary judgment in favor of MERS on a TILA claim because it could not be liable as a nominee). In this case, however, the Cocrofts allege that MERS transferred the loan not as a nominee but as the actual owner of the loan. Compl. at 8, 24. Accepting this allegation as true, as the Court is required to do at this stage of the proceedings, MERS could be a creditor or assignee and thus liable under TILA.

With regard to BAC, plaintiffs have not alleged that the servicer had any interest in the loan that would make it liable under TILA. *See* 15 U.S.C. § 1641(f) (servicers are not liable under TILA unless they own the obligation for more than convenience in servicing the loan). Accordingly, the Court dismisses the claims for damages under TILA against BAC. As for the rescission claim, plaintiffs contend that BAC, as the servicer, may be necessary to afford complete relief if plaintiffs prevail. For this reason, the Court declines to dismiss the rescission claim against BAC. *See Stewart*, 2011 WL 862938, at *3 (refusing to dismiss nominee because eventual rescission judgment might require court to order nominee to take certain actions).

In sum, the Court dismisses the TILA damages claims against BAC but otherwise declines to dismiss the Cocrofts' TILA claim.

**B.      Real Estate Settlement Procedures Act**

Plaintiffs allege that they submitted a qualified written request (QWR) to the defendants on either September 30, 2009 or September 30, 2010. Compl. at 7, 12, 23. The complaint states only that the QWR sought "to ascertain certain information related to the Loan." *Id.* at 7. The Cocrofts claim that the defendants violated RESPA because

they never fully responded to the purported QWR.

Under RESPA, a loan servicer is obligated to respond to a QWR that seeks information relating to the servicing of a loan. 12 U.S.C. § 2605(e)(1). Defendants argue that plaintiffs have not sufficiently pleaded a RESPA claim, because they allege only that their request sought information related to the loan, not specifically information related to servicing. In *MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885 (N.D. Ill. 2000), the court dismissed a RESPA counterclaim when the purported QWR sought only information related to the validity of the loan and mortgage documents but unrelated to servicing. *Id.* at 901. The court also noted that the counterclaim did not allege any problems related to servicing, making it unlikely that any communication between the debtor and creditor was related to servicing. *Id.* The situation here is similar, because the Cocrofts do not allege that their loan was improperly serviced, and their complaint does not specify that the information they sought in their purported QWR was related to servicing.

More recently, however, the Seventh Circuit has called into question the reasoning of *MorEquity*. In *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011), the court defined a QWR broadly as "written correspondence . . . from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error." *Id.* at 680. The Seventh Circuit stated:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent*

*applicable*, that the account is in error or provides sufficient detail to the
servicer regarding other information sought by the borrower."

*Id.* at 687 (quoting 12 U.S.C. § 2605(e)(1)(B)) (emphasis in original). The court noted

that "any request for information made with sufficient detail is enough under RESPA."

*Id.* The court concluded that the plaintiff had made a QWR, rejecting the defendant's

argument based on *MorEquity* and similar cases. *Id.* at 686.

Given the standard set forth by the Seventh Circuit and its apparent

disagreement with the case cited by defendants in support of their argument, plaintiffs

have sufficiently alleged they sent a QWR by requesting information relating to their

loan. The Court declines to dismiss this claim.

**C. Quiet Title**

Defendants contend that plaintiffs' quiet title claim fails because they have not

alleged that they have good title to the property and do not identify what purportedly

invalid instrument is clouding their title. *See Am. Invs-Co Countryside, Inc. v. Riverdale

Bank*, 596 F.2d 211, 216–17 (7th Cir. 1979) (claim to remove cloud from title must

allege that plaintiff has title and that an invalid instrument exists that is clouding title).

The Cocrofts, however, allege in their complaint that they acquired an interest in

their house in 2006. Compl. at 5. Further, the complaint makes clear what instrument

is clouding title and why plaintiffs believe it is invalid. Specifically, plaintiffs allege that

Countrywide was given a mortgage on their property in return for a loan. They also

allege that it is unclear who currently owns that mortgage and that they have rescinded

the mortgage under the provisions of TILA. The Court declines to dismiss this claim.

**D.      Illinois Consumer Fraud and Deceptive Business Practices Act**

The Cocrofts allege that BA, as successor to Countrywide, misrepresented the

value of their house, the finance charges on the loan, and the identity of the lender.

They also allege that defendants continue to misrepresent who actually owns the loan

now.  These actions, plaintiffs contend, violate the Illinois Consumer Fraud and

Deceptive Business Practices Act (ICFA).

> [T]o adequately plead a private cause of action for a violation of [the ICFA], a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception.

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149, 776 N.E.2d 151, 160 (2002).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see Gros*

*v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1029 (N.D. Ill. 2007) (applying

heightened pleading standard to common law fraud and fraud-based ICFA claims).  "A

complaint alleging fraud must provide the . . . who, what, when, where, and how."

*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal

quotation marks omitted).

Defendants argue that the ICFA is intended to reach deceptive practices that

harm consumers generally and is not available to remedy a purely private wrong like the

one here.  The case they cite for that proposition, however, makes clear that rule

applies only when the plaintiff is not a consumer.  *See AGFA Corp. v. Wagner Printing*

*Co.*, No. 2 C 2400, 2002 WL 1559663, at *2 (N.D. Ill. July 10, 2002). In *AGFA*, the court stated that "as long as the plaintiff, whether a business entity or a person, is a consumer, it need only show a personal injury caused by the fraudulent or deceptive acts." *Id.* (internal quotation marks omitted). Defendants do not dispute that the Cocrofts' complaint alleges that they were consumers.

Defendants also contend that plaintiffs' allegation that Countrywide and an appraiser fraudulently inflated the value of the Cocrofts' home does not support an ICFA claim because an appraisal is merely an opinion. *See Sampen v. Dabrowski*, 222 Ill. App. 3d 918, 924–25, 584 N.E.2d 493, 498 (1991). In *Sampen*, however, the court considered an appraisal that clearly indicated it was an estimate, and the only alleged misrepresentation came from the sellers, not the appraiser. *Id.* The court in *Sampen* recognized that in certain circumstances an appraisal could constitute an actionable misrepresentation, if it was presented as a statement of fact that the victim could rely upon. *Id.* at 921–22, 584 N.E.2d at 496. Here, plaintiffs allege that the appraiser and Countrywide falsely represented that the living area of their home was 600 square feet larger than it actually was. This is a statement of fact, not opinion.

The Cocrofts have sufficiently alleged a violation of the ICFA as to BA, the successor to Countrywide that is alleged to have engaged in various misrepresentations at the time of closing. They also have sufficiently alleged a violation as to HSBC, which allegedly informed the Cocrofts that it had no interest in the house but nonetheless foreclosed on the property. Compl. at 8, 14–15.

There is nothing in the complaint, however, to indicate that defendants MERS

and BAC violated the ICFA. BAC is not mentioned at all in the context of plaintiffs'

ICFA allegations. Plaintiffs do not always distinguish between BA and BAC, but none

of their ICFA allegations concern servicing. Some of plaintiffs' references to Bank of

America may be intended to include BAC, but there is no specific allegation that BAC

made any misrepresentation. "A complaint that attributes misrepresentations to all

defendants, lumped together for pleading purposes, generally is insufficient" under Rule

9(b). *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

Plaintiffs do allege that MERS made a misrepresentation, because they claim

that MERS, which at closing was identified solely as a nominee and as having no

interest in the loan, purported to transfer the loan to HSBC in its own name and not as a

nominee. Compl. at 8, 24. There is nothing in the complaint, however, to indicate that

MERS made this statement to plaintiffs or intended that they rely on any deception.

The Cocrofts allege only that MERS identified itself sometimes as a nominee and

sometimes as an actual owner of the loan. Nothing in their complaint, however,

suggests that MERS did this intending the Cocrofts to rely on the statement. Beyond

this, the complaint only alleges that all of the defendants, including MERS,

misrepresented the true owner of the loan. *Id.* at 30. Plaintiffs, however, cannot satisfy

Rule 9(b) by lumping all defendants together. *See Circle Group Holdings, Inc. v.*

*Akhamzadeh*, No. 05 C 3921, 2006 WL 2548164, at *13 (N.D. Ill. Sept. 1, 2006)

(dismissing complaint under Rule 9(b) when plaintiff lumped together all officers and

directors of a corporation and did not discuss their individual actions).

In sum, the Court dismisses the ICFA claim against MERS and BAC but denies

the motion to dismiss with respect to HSBC and BA.

**E.      Misrepresentation**

As discussed above, plaintiffs contend that BA misrepresented the value of their house, the finance charges of the loan, and the identity of the lender at the time of the transaction.  They also allege that defendants continue to misrepresent the current owner of the loan.

> The elements of a cause of action for fraudulent misrepresentation, a form of common law fraud, are:  (1) a false statement of material fact; (2) known or believed to be false by the party stating it; (3) intent to induce the other party to act; (4) action in reliance by the other party; and (5) damage as a result of that reliance.

*Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1085, 702 N.E.2d 265, 272 (1998).  "[I]n order to sustain an action for fraudulent misrepresentation, a plaintiff's reliance on the truth of a defendant's false statement of material fact must have been justified."  *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 32, 801 N.E.2d 1103, 1111 (2003).  Plaintiffs' misrepresentation claim is subject to the particularity requirement of Federal Rule of Civil Procedure 9(b).

Defendants argue that plaintiffs have not sufficiently alleged justifiable reliance on the alleged misrepresentations.  Plaintiffs' only detailed allegation that may concern reliance is the statement in their complaint that "[a]s a result of these misrepresentations the Plaintiffs have suffered the following:  1) taking equity out of the Property that truly did not exist[ ]; 2) increased living expenses in the Loan; 2) [sic] attorney fees and litigation costs; 3) stress; 4) humiliation; and 5) face a foreclosure action by Defendant HSBC."  Compl. at 32.  This list of injuries, however, does not indicate that plaintiffs justifiably relied on the statements of defendants and suffered these damages as a result.  Plaintiffs do not identify any actions they took in reliance on the misstatements of defendants.

Similarly, plaintiffs allege that they have had some difficulty determining who is the actual owner of their loan. They allege that both Countrywide, BA's predecessor, and HSBC have stated that they had interests in the loan and HSBC foreclosed upon it, but that Countrywide did not in fact provide the initial funds and that HSBC later denied any interest in the loan. *Id.* at 8–9, 14–15. Whether or not these statements caused plaintiffs stress, litigation costs, and humiliation, as plaintiffs allege, there is no allegation that they relied on the statements to their detriment.

For these reasons, the Court dismisses this claim.

## F.      Fraud

In addition to their misrepresentation claim, the Cocrofts also assert a claim for fraud. Fraud and fraudulent misrepresentation, however, are effectively the same claim. *See Cwikla v. Sheir*, 345 Ill. App. 3d at 30–32, 801 N.E.2d at 1109–1111 (using fraud and common law fraud interchangeable); *Hirsch,* 299 Ill. App. 3d at 1085, 702 N.E.2d at 272 (fraudulent misrepresentation is a type of common law fraud).

The Court dismisses this claim because it duplicates plaintiffs' misrepresentation claim.

## G.      Fraudulent Possession

Although plaintiffs styled their next claim as fraudulent possession, the parties apparently agree that plaintiffs are asserting a claim for conversion. Under Illinois law, however, "an action for conversion lies only for personal property." *In re Thebus*, 108 Ill. 2d 255, 260, 483 N.E.2d 1258, 1260 (1985); *see Sandy Creek Condo. Ass'n v. Stolt & Egner*, 267 Ill. App. 3d 291, 295, 642 N.E.2d 171, 175 (1994) (holding that selling real

property could not support a claim for conversion). The Cocrofts' actual claim is more likely a claim for trespass. *See Millers Mut. Ins. Ass'n v. Graham Oil Co.*, 282 Ill. App. 3d 129, 139, 668 N.E.2d 223, 230 (1996) ("A trespass is an invasion in the exclusive possession and physical condition of land."). "To sustain a cause of action for trespass to real property, a plaintiff must allege a wrongful interference with his actual possessory rights in the property." *Loftus v. Mingo*, 158 Ill. App. 3d 733, 744, 511 N.E.2d 203, 210 (1987).

Defendants contend that the Cocrofts have not sufficiently alleged that they wrongfully interfered with the Cocrofts' control over the property. In their complaint, however, plaintiffs allege that defendants unlawfully entered their home by conducting a self-help eviction of the plaintiffs and changing the locks on their home in August 2008. Compl. at 34–35. Plaintiffs also allege that at the time, they had made arrangements to rent the property in the short term and then to sell it, and defendants' actions disrupted the sale. *Id.* at 34.

Defendants also argue that HSBC was entitled to take control of the property because it had initiated a foreclosure action. The complaint indeed alleges that HSBC has initiated a foreclosure action. *Id.* at 8. It also indicates, however, that the foreclosure action began more than a year after the defendants allegedly changed the locks. *Id.* at 8, 34. Furthermore, nothing in the complaint suggests that the state court had entered a judgment of foreclosure at the time HSBC changed the locks. Before such a judgment is entered, the mortgagor (the Cocrofts) is generally entitled to retain possession of the mortgaged property. 735 ILCS 5/15-1701(b)(1).

Plaintiffs have adequately alleged wrongful interference with their control over

17

the property.  The Court declines to dismiss this claim.

## H.     Fair Credit Reporting Act

Under the FCRA, furnishers of information, such as defendants, have a duty to

provide accurate information.  That duty, however, may be enforced only by state and

federal officials.  15 U.S.C. § 1681s-2(a), (c), (d).  On the other hand, a consumer may

have a private right of action against an information provider who learns of a dispute

from a consumer reporting agency.  *Id.* §§ 1681i(a)(2), 1681s-2(b); *see Folkers v. Pa.*

*Higher Educ. Assistance Found.*, No. 10 C 4981, 2011 WL 147914, at *3 (N.D. Ill. Jan.

18, 2011); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 924–25 (N.D. Ill. 2000)

(finding that consumer had a private right of action against information furnisher for

violation of § 1681s-2(b)).

Defendants contend that the Cocrofts' FCRA claim fails because their complaint

does not allege that defendants, as furnishers of information, ever learned from a credit

reporting agency that the Cocrofts disputed the information they were providing.

Plaintiffs concede that their complaint does not allege that defendants ever learned of a

dispute from a consumer reporting agency.  Plaintiffs offer no argument why this claim

should not be dismissed.  The Court dismisses this claim.

## I.      Fair Debt Collection Practices Act

Defendants contend that they cannot be liable under the FDCPA because they

are not debt collectors but creditors.  The FDCPA "is aimed at debt collectors" and

under the act an entity can not be both a creditor and a debt collector.  *Schlosser v.*

*Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

The Cocrofts claim that defendants violated the FDCPA by making false and misleading representations and engaging in unfair practices. *See* 15 U.S.C. §§ 1692e, 1692f. Defendants are liable under the FDCPA for these actions only if they are debt collectors. *Id.* Plaintiffs' complaint contains no allegations that any of the defendants are in the business of collecting debt, that they regularly collect debts owed to others, or that they used names other than their own in attempting to collect a debt. *See Goodloe v. Nat'l Wholesale Co.*, No. 03 C 7176, 2004 WL 1631728, at *13 (N.D. Ill. July 19, 2004) (dismissing FDCPA claim where plaintiff did not allege any facts indicating that defendants were debt collectors). Accordingly, the Court dismisses this claim.

Plaintiffs argue that because they rescinded the loan, defendants can no longer be creditors or servicers. Whether or not the Cocrofts actually owe a debt to the defendants, however, the issue under the FDCPA is whether defendants regularly collect debts owed to others and are thus debt collectors. The Cocrofts' complaint contains no allegations that they do so.

### Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss [docket no. 112] in part and denies it in part. Specifically, the Court dismisses the

Cocrofts' TILA claim (Count I) to the extent that it seeks damages against BAC, their

ICFA claim (Count V) against MERS and BAC, their misrepresentation claim (Count VI),

their fraud claim (Count VII), their FCRA claim (Count IX), and their FDCPA claim

(Count X, incorrectly labeled as Count IX).  The Court otherwise denies the motion.

The case remains set for a status hearing on April 25, 2012 at 9:30 a.m.  Counsel

should be prepared to set a discovery schedule at that time.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  April 20, 2012